Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Arlander Keys | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 3007 | **DATE** | 3/19/2002 |
| **CASE TITLE** | Veronica Byrne vs. United States of America | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Memorandum Opinion and Order entered. Defendant's Motion for Summary Judgment [#11] is denied. Status hearing set for 4/5/02 at 9:00 a.m.

(11) ■ [For further detail see order attached to the original minute order.]

**United States District Court**
**Northern District of Illinois**
**Eastern Division**

VERONICA BYRNE )
)
    Plaintiff, ) No. 00 C 3007
)
v. ) Magistrate Judge
) Arlander Keys
UNITED STATES OF AMERICA )
)
    Defendant. )

## MEMORANDUM OPINION AND ORDER

Defendant, Veteran's Administration Residential Care Facility ("VA"), moves this Court for summary judgment pursuant to Rule 56(a) of the Federal Rules of Civil Procedure. Defendant claims that Plaintiff, Veronica Byrne, has failed to raise a genuine issue of material fact in support of her claim that Defendant's negligence violated the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671 et seq. (West 2001). For the reasons set forth below, the Defendant's Motion for Summary Judgment is Denied.

### Factual Background

Plaintiff was married to James Byrne, a long-time VA resident. (Defendant's Statement of Undisputed Facts ["Def's SUF"] ¶¶ 1-2). On September 13, 1998, Plaintiff made one of her many visits to the VA to see her husband. (Byrne Deposition ["Byrne Dep."] at 17). At least

1

initially, Plaintiff's visit was like many others; she proceeded directly to Mr. Byrne's room, tidied up, and took stock of his toiletries. (Def's SUF ¶ 7; Byrne Dep. at 36-37). The couple then prepared to go to lunch. (Byrne Dep. at 30, 37).

The VA serves lunch everyday at noon. (Def's SUF ¶ 8; Byrne Dep. at 30, 37). At 11:30 a.m., Plaintiff and her husband started heading east down the hallway ("east hallway") towards the dining room. (Byrne Dep. at 30, 37). Plaintiff and her husband turned left at an intersecting hallway ("north hallway"), and headed north towards the dining hall. (Def's SUF ¶ 9). Plaintiff did not observe the floor in the north hallway, and does not recall seeing water or ice on the floor at that time. (Byrne Dep. at 41, 64).

Once in the dining room, Plaintiff and her husband sat at their usual table and spoke with various residents, who were also waiting for their lunch. (Def's SUF ¶ 11; Byrne Dep. at 41-42). Plaintiff filled out the menu for her husband's meals for the following day. (Def's SUF ¶ 11; Byrne Dep. at 43). At approximately 12:15 p.m., Plaintiff took the completed menu to the Nurses' Station, which is located outside the dining hall in an adjacent hallway ("adjacent hallway"). (Def's SUF ¶¶ 13-16; Byrne Dep. at

2

43, 65, 68). While at the Nurses' Station, Nurse Wanda Smith directed Plaintiff not to walk through the adjacent hallway, because it was to be used solely by the VA staff. (Def's SUF ¶ 17). Plaintiff apologized and walked west toward the north hallway instead. (Def's SUF ¶ 18). While in the north hallway, Plaintiff did not notice any puddles, melted ice on the floor, mops, or safety cones[1] in the hallway. (Byrne Dep. at 56, 60-61, 88).

As she was walking through the north hallway, Plaintiff slipped and fell in front of the ice machine. (Def's SUF ¶¶ 21-22; Wanda Smith Deposition ["Smith Dep."] at 12). Plaintiff began yelling, and Nurse Smith and Nurse John Swerk immediately ran to Plaintiff's assistance. (Smith Dep. at 14-15). While she was still on the floor, Plaintiff noticed wet puddles approximately an arm's length away from where she landed that she believed to be melted ice. (Byrne Dep. at 56, 59).

In turns out that this was not the first time there was water in the north hallway. Between 9:00 a.m. and 11:00 a.m. on that very morning, Rodney Haskell, a VA housekeeper, cleaned up a spill that occurred when Mr. Byrne used the

---

[1] The deposition testimony indicates that the VA usually puts up warning signs when there is a wet floor. These signs are typically fashioned in the form of red, yellow or orange cones that say "wet floor." (Byrne Dep. at 88; Rodney Haskell Deposition ["Haskell Dep."] at 8, 36).

3

ice machine. (Def's SUF ¶ 35; Haskell Dep. at 32, 34). At that time, Mr. Haskell mopped up the spill with a mop and put up warning signs. (Haskell Dep. at 36). When Mr. Haskell returned from his lunch break at approximately 11:45 a.m., Nurse Smith told Mr. Haskell that, once again, someone had spilled ice in the north hallway. (Def's SUF ¶ 37). Nurse Smith explained that she and another nurse had attempted to contain the spill by pushing the ice up against the wall with towels, but the hallway was still wet. (Haskell Dep. at 38; Smith Dep. at 41). Mr. Haskell cleaned the second spill before noon. (Haskell Dep. at 38). Between the time Mr. Haskell cleaned the second spill and the time when Plaintiff fell, no one contacted Mr. Haskell about any other ice or water in the north hallway. (Def's SUF ¶ 39; Haskell Dep. at 57-58).

## Procedural History

On May 17, 2000, Plaintiff timely filed this lawsuit, alleging a violation of the Federal Tort Claims Act, 28 U.S.C. § 2671 *et seq.* (West 2001). Defendant filed its Motion for Summary Judgment on August 27, 2001, arguing that the VA did not have actual or constructive notice of the spill, and that the VA's reasonable inspection system failed to detect the problem.

4

## Discussion

### I. Summary Judgment Standard of Review

The Federal Rules of Civil Procedure endorse motions for summary judgment "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). When confronted with a motion for summary judgment, the nonmoving party may not rest upon its pleading, but must present specific facts demonstrating that a genuine issue for trial exists. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). This requires the party opposing summary judgment to do more than show that "there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Summary judgment must be denied if the parties dispute facts that, under governing law, might affect the result of the litigation. *Anderson*, 477 U.S. at 248.

The Court construes all facts and draws all reasonable inferences therefrom in the light most favorable to the nonmoving party when ruling on a motion for summary judgment. *Matsushita*, 475 U.S. at 587. Furthermore, it is

5

the jury, not the court, that determines credibility, weighs evidence, and draws all reasonable inferences from the facts. *Anderson*, 477 U.S. at 255.

## II. Illinois Negligence Law

Under the Federal Tort Claims Act ("FTCA"), the government's liability is determined in accordance with the substantive law of the state in which the injury occurred. 28 U.S.C.A. §§ 1346(b) & 2674 (West 2001); *Buscaglia v. United States*, 25 F.3d 530, 534 (7th Cir. 1994). The United States is liable for its negligence to the degree that a municipality would be liable under the Illinois Local Government Tort Immunity Act ("ILGTIA"). 745 ILCS 10/3-102(a) (West 2002); *Cooks v. United States*, 815 F.2d 34, 36 (7th Cir. 1987); *Rose v. United States*, 929 F. Supp. 305, 308 (N.D. Ill. 1996).

To prevail under the ILGTIA, Plaintiff must establish that the Defendant owed her a duty, Defendant breached that duty, and that this breach proximately caused Plaintiff's injury. *Ward v. K-Mart Corp.*, 136 Ill. 2d 132, 140, 554 N.E.2d 223, 227 (1990); *Stewart v. United States*, 918 F. Supp. 224, 225 (N.D. Ill. 1996). In addition to these traditional negligence elements, a party suing the government must also prove that the government had actual or constructive notice of the unsafe condition in time to

correct it. 745 ILCS 10/3-102(a) (West 2002); *Stewart*, 918 F. Supp. at 225.

Section 3-102(b) of the ILGTIA establishes an affirmative defense against constructive notice if a public entity shows that the unsafe condition would not have been discovered by a reasonably adequate inspection system, or that it maintained an established inspection system with due care and did not discover the condition. 745 ILCS 10/3-102(b)(1) & (2) (West 2002); *Mielke v. United States*, No. 00-C456, 2001 WL 395931, at *2 (N.D. Ill. Apr. 18, 2001).

In its motion for summary judgment, Defendant argues that it lacked notice of the unsafe condition. In addition, Defendant claims that it has established an affirmative defense under the ILGTIA, because Defendant had an adequate inspection system in place and did not discover the condition that caused Plaintiff to fall.

### III. Notice

Defendant claims that Plaintiff cannot prove that it had notice of the water in the hallway that caused Plaintiff to fall. Defendant insists that there was no actual notice and challenges Plaintiff's attempt to demonstrate constructive notice. The Court will address each argument in turn.

### A. Constructive Notice

Defendant makes two arguments as to the lack of constructive notice. First, it argues that, because there is no evidence other than the presence of the water and occurrence of the injury, the Defendant is entitled to a judgment as a matter of law. Second, Defendant argues that it maintained a reasonable inspection system and did not discover the condition; therefore, Section 3-102(b) of the ILGTIA provides an affirmative defense against constructive notice. 745 ILCS 10/3-102(b)(1) & (2) (West 2002).

#### 1. Plaintiff Arguably Establishes That Defendant had Constructive Notice.

In Illinois, constructive notice can be established in two ways: (1) the dangerous condition was part of a pattern of conduct or a recurring incident, or (2) the dangerous condition existed for a sufficient amount of time so that it would have been discovered by the exercise of ordinary care. *Culli v. Marathon Petroleum Co.*, 862 F.2d 119, 123 (7th Cir. 1988); *Dunlop v. Marshall Field & Co.*, 27 Ill. App. 3d 628, 631, 327 N.E.2d 16, 19 (1st. Dist. 1975).

In the case at bar, the Court recognizes that it is Plaintiff's burden to prove that Defendant had notice of the dangerous condition giving rise to her injury. *Burke v. Grillo*, 227 Ill. App. 3d 9, 12, 590 N.E.2d 964, 969 (2nd

Dist. 1992); *Barchard v. City of Chicago*, No. 91-C4801, 1993 WL 276726, at *3 (N.D. Ill. July 22, 1993). Since the issue of notice is raised on summary judgment, Plaintiff must come forward with specific facts indicating that there is a genuine issue of material fact on this issue. *Barchard*, 1993 WL 276726 at *3.

Plaintiff contends that Defendant was on constructive notice of the spill because VA employees were aware that there was a recurring problem with ice spills in the north hallway. In Illinois, it is well settled law that "[t]he regular occurrence of a problem makes it foreseeable, imposing a duty to take steps to prevent or control the problem, or at least to warn of the potentially dangerous situation." *Mielke v. United States*, No. 00-C456, 2001 WL 395931, at *2 (N.D. Ill. Apr. 18, 2001); *Buford v Chicago Housing Authority*, 131 Ill. App. 3d 235, 247, 476 N.E.2d 427, 436 (1st Dist. 1985); *See also Barchard v. City of Chicago*, No. 91-C4801, 1993 WL 276726, at *5 (N.D. Ill. July 22, 1993) (denying summary judgment where City knew there was a leakage problem in airport terminal where plaintiff fell). Therefore, the question is not whether the Defendant had constructive notice of the particular spill, but rather, whether Defendant knew there were frequent ice spills in the north hallway. *Culli*, 862 F.2d at 127.

In the present case, the evidence is sufficient to create a genuine issue of fact that the VA knew there was a recurring problem with ice spilling in the north hallway. In his deposition, Mr. Haskell gave the following answers to the questions posed by Plaintiff's attorney:

> Q. Do you know from any source who spilled the ice cubes and water on the floor?
>
> A. I would say Mr. Byrne did.
>
> Q. How do you know Mr. Byrne put the ice and water on floor?
>
> A. Well, I don't know, but the reason I say this is because me [sic] working in housekeeping, Mr. Byrne, he is always going to the ice machine trying to get ice. And a lot of times when you have the pitcher up to the ice machine and the ice is coming down the cup, he will fill the pitcher up and ice from the pitcher, once the pitcher is filled up, ice would jump out of the pitcher and onto the floor.

(Haskell Dep. at 22-23). Similarly, Nurse Smith testified that she knew of the recurring problem of Mr. Byrne spilling whenever he attempted to get ice from the machine in the north hallway. (Smith Dep. at 19).

The Court can conclude that, based upon this evidence, a fact-finder could infer that VA employees had knowledge of recurring ice spills in the north hallway. Because such knowledge creates a question as to whether Defendant had constructive knowledge of a dangerous condition, summary judgment is denied.

**B. Actual Notice**

In addition, Plaintiff has introduced evidence from which a fact-finder could infer that Defendant also had actual notice of a dangerous condition in the north hallway. Mr. Haskell testified that he was called to clean up a spill in the north hallway when he returned from his lunch at approximately 11:45. (Haskell Dep. at 38). Nurse Smith indicated to Mr. Haskell that she and another nurse had attempted to clean the spill earlier, using towels and pushing the ice up against the wall. (Smith Dep. at 41). Mr. Haskell had the second spill cleaned by noon. (Haskell Dep. at 38).

These facts can give rise to the inference that Mr. Haskell may have been careless in cleaning up the spill. *Peterson v. Wal-Mart Stores, Inc.*, 241 F.3d 603, 605 (7th Cir. 2001) (denying summary judgment where, based on plaintiff's testimony, a jury could infer that Defendant's employees may have been careless in failing to notice a spill in the store's aisle.) It is undisputed that Plaintiff fell in approximately the same location as the second spill that Mr. Haskell claims to have cleaned before she fell. In addition, there is no direct evidence pointing to exactly how the water got in front of the ice machine after the second spill was cleaned by Mr. Haskell. It could

be inferred that Mr. Haskell failed to properly clean the second spill and that this spill caused Plaintiff to fall.

Finally, even accepting Defendant's assertions that Mr. Haskell properly cleaned the spill before noon, and that there must have been a subsequent spill between 12:00 and 12:15 p.m., summary judgment is still not appropriate. There is no flat rule that fifteen minutes is "always too short a period for a duty of inspection and clean up to arise." *Peterson,* 341 F.3d at 605. A jury may conclude, based on the evidence, that a fifteen-minute "safe harbor" would not be appropriate in this case, given the probability of ice spills and the fact that the north hallway is frequented by disabled persons. *Id.* Drawing all inferences in Plaintiff's favor, the Court finds that a fact-finder could infer that there was actual or constructive notice.

## IV. Affirmative Defense

Defendant next contends that § 3-102(b) of the ILGTIA allows for an affirmative defense against a finding of constructive notice, if the VA can establish that it maintained and operated a reasonable inspection system and did not discover the condition. 745 ILCS 10/3-102(b) (West 2002); *Buford v. Chicago Housing Authority,* 131 Ill. App. 3d 235, 247, 476 N.E.2d 427, 437 (1st Dist. 1985); *Barchard v. City of Chicago,* No. 91-C4801, 1993 WL 276726, at *5 (July

22, 1993). Of course, even if Defendant were able to establish an affirmative defense, the defense would not overcome Plaintiff's showing of actual notice. Therefore, whether Defendant can establish such a defense is irrelevant for purposes of this motion. 745 ILCS 10/3-102(b) (West 2002).

Nevertheless, the Court finds that there are questions of material fact with regard to Defendant's attempt to establish this affirmative defense. The Court utilizes a balancing test when deciding whether Defendant had an adequate inspection system under the ILGTIA. *Buford*, 131 Ill. App. 3d at 248. According to the ILGTIA, the Court must consider "the practicability and cost of inspection weighed against the likelihood and magnitude of the potential danger to which failure to inspect would give rise." 745 ILCS 10/3-102(b)(1) (West 2002); *Barchard*, 1993 WL 276726, at *5. The burden is on Defendant to come forward with evidence that the inspection system in place was reasonable. *Barchard*, 1993 WL 276726, at *5. Defendant, moving for summary judgment on an affirmative defense, must demonstrate the absence of a genuine issue of material fact regarding the adequacy of their inspection system. *Id.* at *5.

To support this contention, Defendant relies upon evidence that its employees, once notified, promptly cleaned previous spills in the north hallway. (Haskell Dep. at 22). Plaintiff persuasively argues that, because of the frequency of problems with ice spillage in the north hallway, and the fact that the hallway is frequented by the elderly and disabled, Defendant's duty of inspection may require more frequent patrolling of the area near the ice machine. More importantly, Defendant has not come forward with evidence that the cost and practicability of a better inspection system in front of the ice machine, or even purchasing a new type of ice machine that lessens the problem, outweighs the likelihood and magnitude of potential danger. *See Barchard*, 1993 WL 276726, at \*6 (summary judgment denied where the City failed to present evidence of cost or practicability of a better staffed custodial function). Therefore, drawing all inferences in favor of Plaintiff, the court finds that genuine issues regarding the adequacy of the Defendant's inspection system are better left for the fact-finder to resolve.

## Conclusion

For the reasons set forth above, the Court finds that genuine issues of material fact exist regarding whether there was actual or constructive notice by the Defendant.

14

Moreover, factual issues exist with regard to the adequacy of the Defendant's inspection system.

**IT IS THEREFORE ORDERED** that:

Defendant's Motion for Summary Judgment be, and the same hereby is, **DENIED**.

MARCH 19, 2002          ENTER:

*Arlander Keys*
ARLANDER KEYS
United States Magistrate Judge